UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO PAVONE, KAREN PAVONE, and M.P., a minor child, by and through his Parents and Next Friends Antonio Pavone and Karen Pavone, on behalf of themselves, and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE LAW OFFICES OF ANTHONY MANCINI, LTD., an Illinois Corporation,<br><br>*Defendant.* | Civil Action<br><br>Case No. 1:15-cv-01538<br><br>JURY TRIAL DEMANDED |

### AMENDED COMPLAINT FOR RELIEF – CLASS ACTION

NOW COME the Plaintiffs, ANTONIO PAVONE ("Mr. Pavone"), KAREN PAVONE ("Mrs. Pavone"), and M.P., a minor child by and through his Parents and Next Friends Antonio Pavone and Karen Pavone (collectively, "the Pavones"), by and through their attorneys, Zamparo Law Group, P.C. and Francis & Mailman, P.C., and complaining of the Defendant, THE LAW OFFICES OF ANTHONY MANCINI, LTD., an Illinois Corporation ("Mancini"), allege as follows:

### NATURE OF THE ACTION

1. This class action is brought pursuant to the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 *et seq.* (the "DPPA") for redress of injuries suffered by Plaintiffs and others similarly situated, when Defendant improperly obtained, used, and disclosed their personal information contained in a motor vehicle record as part of its systemic procedures employed in

Defendant's advertising campaigns, without the Plaintiffs' express consent and without any other permissible purpose.

2. The DPPA is designed to prevent the disclosure of personal information held in state motor vehicle records. It was passed in 1994 in part due to the murder of a young woman whose killer obtained her unlisted address from state motor vehicle records. Other concerns, such as those for the safety of domestic violence victims and peace officers, the prevention of identity theft, and the invasion of privacy also inform the DPPA's purpose. *See, e.g., Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 607-08 (7th Cir. 2012) (outlining the DPPA's purpose and legislative history).

3. Defendant systemically violates the DPPA by improperly obtaining and using personal information from confidential motor vehicle records for advertising purposes.

## JURISDICTION AND VENUE

4. This action arises under, and is brought pursuant to the DPPA. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 2724(a) and 28 U.S.C. §§ 1331, 1337, as the actions arise under the laws of the United States.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the Defendant does business in the District and Defendant's actions were directed to the Plaintiffs within the District.

## THE PARTIES

6. The Pavones are natural persons who reside in the District. M.P. is their minor child.

7. Defendant Mancini is an Illinois Corporation with its principal place of business located at 7170 W. Grand Avenue, Unit 1E in Chicago, Illinois 60707. Its registered agent is

Anthony Mancini whose address is 1015 Arcady Drive, Lake Forest, IL 60045. Mancini is a law firm. Its principal attorney is licensed to practice law in the State of Illinois.

## FACTS SUPPORTING ALL CLAIMS FOR RELIEF

8. At approximately 3:52 p.m. on January 15, 2015, the Pavones were involved in an automobile collision. After the collision, the Schaumburg Police Department was alerted and an Illinois Traffic Crash Report (the "Report") was created by the responding officer.

9. The Report is a motor vehicle record as defined by the DPPA in 18 U.S.C. § 2725(1).

10. The Report contained personal information about Mr. Pavone, including his name, driver identification number, home address, telephone number, date of birth, and sex.

11. The Report contained personal information about Mrs. Pavone, including her name, home address, telephone number, date of birth, and sex.

12. The Report contained the personal information about M. P., including his name, home address, a telephone number, his date of birth, and sex.

13. Upon information and belief, Mancini knowingly obtained a copy of the Report from the Schaumburg Police Department, and/or the Illinois Secretary of State directly and/or through a private entity supplier of such motor vehicle records as part of Mancini's regular practice and procedure of obtaining such records for advertising and solicitation purposes.

14. Specifically, Mancini obtains motor vehicle records as defined by the DPPA in 18 U.S.C. § 2725(1) on a daily or weekly basis in order to mail solicitation letters to persons involved in car accidents in order to advertise its legal services to such persons and to solicit new potential clients.

15. Mancini obtains Illinois Traffic Crash Reports in bulk for a fee, and without knowing the names and addresses of the persons who are the subjects of such Reports in advance of ordering them.

16. Upon information and belief, the number of persons whose motor vehicle records are obtained by Mancini for the purposes of advertising and solicitation is in the hundreds if not thousands.

17. Advertising for legal services for the solicitation of new potential clients is not a permissible purpose for obtaining motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

18. Upon information and belief, Mancini thus provides an improper and untrue certification to its supplier of motor vehicle records, attesting that it will use such records only for DPPA permissible purposes.

19. Nevertheless, Mancini uses motor vehicle records such as the ones at issue in this case for advertisement purposes and for soliciting new potential clients.

20. Specifically, on January 21, 2015, Mancini sent a parcel to Plaintiff Antonio Pavone at the home address of all three Plaintiffs.

21. The parcel included, among other things, an unreacted copy of the Report and correspondence (hereinafter the "solicitation letter") which, *inter alia*, stated "Get legal help now. I would appreciate the opportunity to advise you on your legal rights pertaining to your injuries . . . ."

22. A redacted copy of that solicitation letter and Report sent from Mancini to the Mr. Pavone is attached hereto and made a part hereof as Exhibit A.

23. Upon receipt of the parcel from Mancini, Mr. and Mrs. Pavone were shocked and dismayed, very concerned that their personal information and that of their child had been transmitted to someone they did not know and used to solicit them for legal representation.

24. Mr. and Mrs. Pavone were particularly distressed by the fact that information about their minor child had been obtained by Mancini without their express consent.

25. As a result of Mancini's willfully and knowingly obtaining, using, and disclosing the Pavones' personal information, in violation of clearly established law, the Pavones suffered, without limitation, the following damages: emotional distress, anxiety, loss of privacy, and fear for the safety of their minor child.

## CLASS ACTION ALLEGATIONS

26. Plaintiffs Antonio and Karen Pavone bring this action on behalf of a class defined as follows:

(a) all natural persons residing within the State of Illinois to whom, within four years prior to the filing of this action and extending through the resolution of this action, Defendant sent a solicitation letter substantially similar in form to the correspondence it sent to Mr. Pavone as described above.

(b) all natural persons residing within Cook County, Illinois to whom, within four years prior to the filing of this action and extending through the resolution of this action, Defendant sent a solicitation letter substantially similar in form to the correspondence it sent to Mr. Pavone as described above.

(c) all natural persons who were the subjects of an Illinois Traffic Crash Report issued by the Schaumburg Police Department, to whom, within four years prior to the filing of this action and extending through the resolution of this action, Defendant

sent a solicitation letter substantially similar in form to the correspondence it sent to Mr. Pavone as described above.

27. **Numerosity.** FED. R. CIV. P. 23(a)(1). The Class members are so numerous that joinder of all is impractical. Upon information and belief, Mancini improperly obtains motor vehicle records on hundreds if not thousands of drivers, and those persons' names and addresses are identifiable through documents maintained by Mancini.

28. **Existence and Predominance of Common Questions of Law and Fact.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

   (a)   Whether Mancini violated section 2722(a) of the DPPA by obtaining or disclosing personal information from a motor vehicle record without a permissible purpose under section 2721(b) of the DPPA; and

   (b)   Whether Mancini violated section 2722(b) of the DPPA by making any false representation for obtaining personal information from a motor vehicle record in violation of the DPPA.

29. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs have the same claims for liquidated and punitive damages that they seek for absent class members.

30. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiffs Antonio and Karen Pavone are adequate representatives of the Classes. Their interests are aligned with, and are not antagonistic to, the interests of the members of the Classes they seek to represent, they have retained counsel competent and experienced in class action litigation, and they intend to prosecute this action

vigorously. Plaintiffs Antonio and Karen Pavone and their Counsel will fairly and adequately protect the interests of members of the Classes.

31. **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The liquidated and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Mancini's conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Mancini's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## FIRST CLAIM FOR RELIEF
### For Violations of the Driver's Privacy Protection Act

32. The DPPA prohibits any person from obtaining or disclosing personal information from a motor vehicle record without a permissible purpose and from falsely representing the purpose for which one is obtaining such records. 18 U.S.C. § 2722(a) and (b).

33. Mancini violated § 2722(a) and (b) of the DPPA when it knowingly obtained the Plaintiffs' personal information from a motor vehicle record for an impermissible purpose and/or

when it falsely represented the true purpose for which it was obtaining such information, namely to send advertising material to Plaintiffs in an attempt to solicit new potential clients.

34.     Mancini's acts were willful and in reckless disregard of the protections afforded Plaintiffs by the DPPA as part of its systemic advertising campaign and in violation of clearly established law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment on their behalf and against the Defendant as follows:

A.    An order certifying the proposed Classes under Rule 23 and appointing Plaintiffs Antonio and Karen Pavone and the undersigned counsel of record to represent same;

B.    An order enjoining Defendant from the unlawful procurement and use of personal information from motor vehicle records;

C.    An award of liquidated damages of $2,500 for each of Plaintiffs and each of the Class members;

D.    An award of punitive damages for Plaintiffs and the Class members;

E.    An award of pre-judgment and post-judgment interest as provided by law;

F.    An award of attorneys' fees and costs; and

G.    Such other relief as the Court deems just and proper.

DATED:      March 27, 2015            Respectfully submitted,

                                      By:    /s/ Roger Zamparo, Jr.

                                             Roger Zamparo, Jr.
                                             ZAMPARO LAW GROUP, P.C.
                                             1600 Golf Road, Suite 1200
                                             Rolling Meadows, IL 60008-4229
                                             (224) 875-3202 (t)
                                             (312) 276-4950 (f)
                                             roger@zamparolaw.com

James A. Francis*
John Soumilas*
FRANCIS & MAILMAN, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600(t)
(215) 940-8000(f)
*Attorneys for Plaintiffs and Classes*

\* *pro hac vice applications forthcoming*

# EXHIBIT A

# The Law Offices of Anthony Mancini Ltd.



January 21, 2015

Dear Mr. Antonio Pavone,

    It has come to my attention that you may have been in an innocent victim of an automobile accident, and it appears that you may have suffered severe injuries as a result of the accident. I would like the opportunity to advise you on your legal rights pertaining to your injury, as **you may be entitled to monetary damages.**

    By now, you may have been contacted by an insurance adjuster asking for a recorded statement. **Do you realize that you could say something that could be used against you—even if the insurance adjuster is from your own insurance company?**

    An injury can be very challenging. You may suffer from agonizing pain, fears and worries about your condition, as well as other inconveniences. It's an extremely difficult time. Please, do not try to handle this alone. Insurance companies have attorneys representing their best interests. You should have a well-qualified personal injury attorney representing you. **Get legal help now!**

    I would appreciate the opportunity to advise you on your legal rights pertaining to your injuries, before you say or sign something you may not fully understand, and later regret signing. For a **free**, no obligation analysis of your case, please call 773-745-1909. I will help you understand what money you can recover for your injuries pertaining to this accident. I will sort through and complete any paperwork regarding this accident. Your only job will be to get well.

    Are you getting the "runaround" trying to get your car repaired? If I handle your injury claim, **I will also negotiate to have your car repaired**, at no additional charge.

    Representation is on a contingency basis. This means there will be no legal fee unless you recover money. I am available for appointments days, evenings, and weekends for your convenience. For those who are unable to travel to our offices, we will come to your home to meet with you.

    When it comes to fighting for your rights, I believe in only one principal:
**Maximum Justice, Maximum Results.**

I wish you all the best, and hope for a speedy recovery. I look forward to hearing from you.

Very Truly Yours,

Anthony Mancini
Attorney at Law

---

*"If you are injured in an accident, and it's not your fault, talk to no one until you talk to me.*

*I'll make it right when you've been wronged."*

—Anthony Mancini,
Attorney at Law

**The Personal Injury Law Center**
7170 West Grand Ave.
Suite 1E
Chicago, IL 60707
www.mancinilaw.com
phone: 773.745.1909
*f*ax: 773.745.1912

Call 24hr availability
888-452-8944

*Hablamos español.*

56/Rpt 56
Sht 2

# ILLINOIS TRAFFIC CRASH REPORT

Case: 1:15-cv-01538 Document #: 5-1 Filed: 03/27/15 Page 2 of 15 PageID #:38

Sheet 1 of 1 Sheets

**AGENCY CRASH REPORT NO.** IY002
**LARS CODE** X00018215B

| DRAC | PEDV | TRFQ | TRFC | WEAT | DRVA | VIS | VEHD | LGHT | COLL | MANV |
|---|---|---|---|---|---|---|---|---|---|---|
| U1: 1 | 1 | 1 | 1 | 1 | 7 | U1: 1 | U1: 1 | 1 | 11 | 11 |
| U2: 1 | | | | | | U2: 1 | U2: 1 | | 11 | 11 |

**INVESTIGATING AGENCY:** Schaumburg Police Dept
**ADDRESS NO:** 13A (CIRCLE) (E) (AT INTERSECTION WITH)
**HIGHWAY OR STREET NAME:** GOLF RD
**NAME OF INTERSECTION OR ROAD FEATURE:** NATIONAL PKY
**TYPE OF REPORT:** ☑ ON SCENE / NOT ON SCENE (DESK REPORT) / AMENDED
**DAMAGE:** ☐ $500 OR LESS ☑ $501-$1,500 ☑ OVER $1,500
**City:** SCHAUMBURG **County:** COOK **Township:** ☐
**INTERSECTION RELATED:** ☐ Y ☑ N
**PRIVATE PROPERTY:** ☐ Y ☑ N
**HIT & RUN:** ☐ Y ☑ N
**A No Injury and/or Tow Due To Crash**
**B Injury and/or Tow Due To Crash** ☐

**DATE OF CRASH:** 1/15/2015 **TIME:** 3:52 ☐ AM ☑ PM
**NUMBER MOTOR VEHICLES INVLD:** 2
**NO LANES:** 15
**TRFW:** 2

## UNIT 1

**NAME:** PAVONE, ANTONIO ☑ DRIVER ☐ PARKED ☐ DRIVERLESS ☐ PED ☐ PEDAL ☐ EQUES ☐ NMV ☐ NCV
**STATE:** IL **DRIVER LICENSE NO:** D **CLASS:** C **INJURY:** 1 **EJECT:** 1 **SAFT:** 4 **AIR:**
**MAKE:** HONDA **MODEL:** ACCORD EX-L **YEAR:** 2008
**VIN:** **STATE:** IL **PLATE NO:**
**VEHICLE OWNER (LAST, FIRST M.I.):** PAVONE, ANTONIO
**OWNER ADDRESS (STREET, CITY, STATE ZIP):**
**EMS AGENCY:** **TELEPHONE:** **(HOSP):** **INSURANCE CO:** **POLICY NO:**
**DOORING:** ☐ Y ☑ N **PEDALCYCLIST:** ☐ Y ☑ N
**POINT OF FIRST CONTACT:** 1
**CIRCLE NUMBER(S) FOR DAMAGED AREA(S):** 00-NONE 10-UNDER CARRIAGE 11-TOTAL (ALL AREAS) 12-OTHER 99-UNKNOWN
**VEHU:** 2 **RBLR:** 2 **ALIGN:** 1
**TOWED DUE TO CRASH:** ☐ Y ☑ N
**FIRE:** ☐ Y ☑ N
**CELLPHONE:** ☐ Y ☑ N
**EXCEED SPEED LIMIT:** ☐ Y ☑ N
**COM VEH:** ☐ Y ☑ N
**BAC:** 96
**U1:** 1

## UNIT 2

**NAME:** PAVONE, KAREN ☑ DRIVER ☐ PARKED ☐ DRIVERLESS ☐ PED ☐ PEDAL ☐ EQUES ☐ NMV ☐ NCV
**DATE OF BIRTH:** **SEX:** M **SAFT:** 2 **AIR:** 4
**MAKE:** CHEVROLET **MODEL:** EQUINOX **YEAR:** 2012
**PLATE NO:** **STATE:** IL **VIN:**
**OWNER ADDRESS (LAST, FIRST M.I.):**
**OWNER ADDRESS (STREET, CITY, STATE ZIP):**
**EMS AGENCY:** **TELEPHONE:** **(HOSP):** **INSURANCE CO:** **POLICY NO:**
**POINT OF FIRST CONTACT:** 5
**CIRCLE NUMBER(S) FOR DAMAGED AREAS:** 00-NONE 10-UNDER CARRIAGE 11-TOTAL (ALL AREAS) 12-OTHER 99-UNKNOWN
**VEHU:** 2 **RDFF:** 1 **ALIGN:** 7
**TOWED DUE TO CRASH:** ☐ Y ☑ N
**FIRE:** ☐ Y ☑ N
**CELLPHONE:** ☐ Y ☑ N
**EXCEED SPEED LIMIT:** ☐ Y ☑ N
**COM VEH:** ☐ Y ☑ N
**BAC:** 96
**U2:** 2

### PASSENGERS & WITNESSES ONLY

| (UNIT) | (SEAT) | (SEX) | (SAFT) | (AIR) | (INJ) | (EJCT) | NAME | ADDR | TEL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | |
| 2 | 4 | 2 | 3 | C | 2 | 1 | | | |
| 2 | 6 | 6 | 3 | C | 1 | 1 | | | |

**CONTRIBUTORY CAUSE(S):** PRIMARY 28 SECONDARY 03
**POSTED SPEED LIMIT:** 45
**Did crash occur in a Work Zone?** ☐ Y ☑ N

### DAMAGED PROPERTY OWNER NAME

| PROPERTY OWNER ADDRESS | CITY | STATE | ZIP | DAMAGED PROPERTY |
|---|---|---|---|---|

### TAKEN TO

| (UNIT) | (LOC) | (EVNO) | (HOSP) | (EVNT) |
|---|---|---|---|---|
| 1 | | ☐ | | 11 |
| 2 | | ☑ | | 11 |
| 3 | | ☐ | | 1 |

**ARREST NAME:** SECTION: 5/11-601A
**OFFICER ID:** **SIGNATURE:** **SUPERVISOR ID:** **BEAT/DIST:**
**CITATION NO:** **COURT DATE:** 1/15/2015 **COURT TIME:** ☐ AM ☐ PM
**TIME NOTIFIED:** 3:52 ☐ AM ☑ PM
**DATE POLICE NOTIFIED:** 1/15/2015

**If YES check one below:** ☐ Construction ☐ Maintenance ☐ Utility ☐ Unknown work zone type
**Workers present?** ☐ Y ☑ N

X00018215B

A Diagram and Narrative are required on all Type B crashes, even if units have been moved prior to the officer's arrival.

56

Unit #2

National Pkwy

Golf Rd

Not to scale

NARRATIVE (Refer to vehicle by Unit No.)

Unit #1 and Unit #2 were involved in a rear-end collision on Eastbound Golf Road just past the intersection with National Parkway.

Driver #1 stated that ▊ was Eastbound on Golf Road on the curb lane just past National Parkway directly behind Unit #2. Driver #1 stated that Unit #2 stopped suddenly in front of ▊ at which time the front of ▊ Unit #1 struck the rear of Unit #2.

Driver #2 stated that ▊ was Eastbound on Golf Road on the curb lane just past National Parkway directly in front of Unit #1. Driver #2 stated that an uninvolved unit who was traveling in front of ▊ suddenly slowed to turn into the parking lot on the South side of the roadway. Driver #2 stated that ▊ stopped at which time the front of Unit #1 struck the rear of ▊ Unit #2.

LOCAL USE ONLY

Motorist 1 Report No.
Motorist 2 Report No.
U1 Color: Black   U1 Race
U1 Towed by / to
U2 Color: Black   U2 Race
U2 Towed by / to

COMMERCIAL MOTOR VEHICLE (CMV)

IF MORE THAN ONE CMV IS INVOLVED, USE SR 1050A ADDITIONAL UNITS FORMS.

A CMV is defined as any motor vehicle used to transport passengers or property and
1. Has a weight rating of more than 10,000 pounds (example truck or truck/trailer combination), or
2. Is used or designed to transport more than 15 passengers, including the driver (example: shuttle or charter bus); or
3. Is designed to transport 15 or fewer passengers and operated by a contract carrier transporting employees in the course of their employment (example: employee transporter – usually a van-type vehicle or passenger car); or
4. Is used or designed to transport between 9 and 15 passengers, including the driver, for direct compensation (example large van used for specific purpose); or
5. Is any vehicle used to transport any hazardous material (HAZMAT) that requires placarding (example: placards will be displayed on the vehicle).

UNIT ___
CARRIER NAME ___
ADDRESS ___
CITY/STATE/ZIP ___
USDOT NO. ___     ILCC NO. ___
Source of above info.  ☐ Side of Truck  ☐ Papers  ☐ Driver  ☐ Log Book
Gross Vehicle Weight Rating (GVWR) ___
Were HAZMAT placards displayed on the vehicle?  ☐ Y  ☐ N
If yes, name on placard ___     1-digit Hazard Class no. ___
Did HAZMAT Spill from the vehicle (do not consider fuel from the vehicle's own tank)?  ☐ Y  ☐ N  ☐ UNK
Did HAZMAT Regulations violation contribute to the crash?
☐ Y  ☐ N  ☐ UNK
Did Motor Carrier Safety Regulations (MCS) violation contribute to the crash?  ☐ Y  ☐ N  ☐ UNK
Was a Driver/Vehicle Examination Report form completed?
HAZMAT  ☐ Y  ☐ N     Out of Service?  ☐ Y  ☐ N
MCS       ☐ Y  ☐ N     Out of Service?  ☐ Y  ☐ N
Form No. ___
IDOT PERMIT NO ___     WIDE LOAD?  ☐ Y  ☐ N
TRAILER WIDTH(S)  ☐ 0-95"  ☐ 97-102"  ☐ >102"
TRAILER 1 ___     TRAILER 2 ___     NO. OF AXLES ___
TRAILER LENGTH(S): 1 ___ ft     2 ___ ft
TOTAL VEHICLE LENGTH ___ ft
CRASH LOCATION:  ☐ CITY OF ___  OR  ☐ NEAREST CITY
  ___ MILES  N E S W  OR ___
           CIRCLE ONE        CITY NAME
SELECT CODES FROM BACK COVER OF CRASH BOOKLET
VEHICLE CONFIGURATION ___
CARGO BODY TYPE ___     LOAD TYPE ___

Case: 1:15-cv-01538 Document #: 5-1 Filed: 03/27/15 Page 4 of 15 PageID #:40

**Narrative**

Damage to both units consistent with driver's accounts. Driver #1 was issued a citation for failure to reduce speed to avoid an accident.