# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTONIO PAVONE, KAREN PAVONE, and M.P., a minor child, by and through his Parents and Next Friends Antonio Pavone and Karen Pavone, on behalf of themselves, and all others similarly situated, | Civil Action <br><br> Case No. 1:15-cv-01538 <br><br> JURY TRIAL DEMANDED |
| *Plaintiffs,* | |
| v. | Assigned Judge <br> Hon. Matthew F. Kennelly |
| THE LAW OFFICES OF ANTHONY MANCINI, LTD., an Illinois Corporation, | Assigned Magistrate Judge <br> Hon. Michael T. Mason |
| *Defendant.* | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

| | |
|---|---|
| Roger Zamparo, Jr. | James A. Francis |
| Jordan M. Sartell | John Soumilas |
| ZAMPARO LAW GROUP, P.C. | FRANCIS & MAILMAN, P.C. |
| 1600 Golf Road, Suite 1200 | 100 S. Broad Street, 19th Floor |
| Rolling Meadows, IL 60008-4229 | Philadelphia, PA 19110 |
| T. (224) 875-3202 | T. (215) 735-8600 |
| F. (312) 276-4950 | F. (215) 940-8000 |
| roger@zamparolaw.com | jfrancis@consumerlawfirm.com |
| jordan@zamparolaw.com | jsoumilas@consumerlawfirm.com |

*Attorneys for Plaintiffs and Classes*

## **TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. LEGAL STANDARD.....................................................................................................2

III. FACTUAL BACKGROUND .........................................................................................3

IV. ARGUMENT..................................................................................................................3

       A. Plaintiffs Properly Plead that Defendant Knowingly Obtained Their "Personal Information" From A Motor Vehicle Record ...............................4

       B. Plaintiffs Properly Allege That Defendant Knowingly Obtained, Disclosed, Or Used Personal Information From A "Motor Vehicle Record" ........................................................................................................................7

V. CONCLUSION.............................................................................................................12

## **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 2

*Best v. Berard*,
    837 F. Supp. 2d 933 (N.D. Ill. 2011) .................................................................................... 9

*City of Chicago v. U.S. Dep't of the Treasury*,
    423 F.3d 777 (7th Cir. 2005) ................................................................................................ 6

*Deicher v. City of Evansville, Wis.*,
    545 F.3d 537 (7th Cir. 2008) ................................................................................................ 9

*Graczyk v. West Publishing Co.*,
    660 F.3d 275 (7th Cir. 2011) ................................................................................................ 9

*Lake v. Neal*,
    585 F.3d 1059 (7th Cir. 2009) .......................................................................................... 3, 8

*Mattivi v. Russell*,
    No. Civ. A. 01-WM-533 (BNB), 2002 WL 31949898 (D. Colo. Aug. 2, 2002) .............. 10

*McReynolds v. Merrill Lynch & Co., Inc.*,
    694 F.3d 873 (7th Cir. 2012) ................................................................................................ 2

*Senne v. Village of Palatine, Illinois*,
    695 F.3d 597 (7th Cir. 2012) ....................................................................................... *passim*

*Senne v. Village of Palatine, Illinois*,
    784 F.3d 444 (7th Cir. 2015) .............................................................................................. 11

*Whitaker v. Appriss, Inc.*,
    Case No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559
    (N.D. Ind. Sept. 11, 2014) ............................................................................................ 10, 11

**STATUTES**

18 U.S.C. § 2722 ........................................................................................................... 3, 5, 6, 11

18 U.S.C. § 2724 ...................................................................................................................... 4

18 U.S.C. § 2725(1) .......................................................................................................... 7, 8, 11

625 ILL. COMP. STAT. 5/11-412 (2015) ...................................................................................... 6

ii

Plaintiffs Antonio Pavone ("Mr. Pavone"), Karen Pavone ("Mrs. Pavone"), and M.P., a minor child by and through his Parents and Next Friends Antonio Pavone and Karen Pavone (collectively, "the Pavones") hereby oppose Defendant The Law Offices of Anthony Mancini, Ltd.'s Motion to Dismiss Plaintiffs' Amended Complaint ("Motion").

## I.      INTRODUCTION

In their Amended Complaint (Dkt. No. 5), Plaintiffs allege violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725, on behalf of themselves and all others similarly situated. Defendant, a personal injury law firm, knowingly obtained Plaintiffs' personal information from a motor vehicle record and used it to solicit them for legal representation which they did not seek. The DPPA prohibits lawyers from using such personal information to solicit potential clients. Defendant has moved to dismiss Plaintiffs' Amended Complaint.[1] Defendant's Motion lacks merit and should therefore be denied.

Defendant argues that the record it obtained – an Illinois Traffic Crash Report – is excluded from the definition of "personal information" under the DPPA allegedly because it also includes information about Plaintiffs' car accident. The exception to which Defendant cites, however, does not swallow the rule. The Seventh Circuit has already found that a record could include DPPA-regulated personal information even when that personal information is co-mingled with other information, such as information regarding motor-vehicle infractions. *Senne v. Village of Palatine, Illinois,* 695 F.3d 597, 606, 609 (7th Cir. 2012).[2]

---

[1] Plaintiffs wish to inform this Court that they brought a substantially similar lawsuit and that a substantially similar motion to dismiss is currently pending before Judge Amy J. St. Eve. *See Pavone, et al. v. Meyerkord & Meyerkord, LLC*, No. 15-cv-1539 (N.D. Ill.).

[2] Nor is there any serious question that Defendant obtained the record at issue to learn Plaintiffs' personal information – names and address – in order to mail advertising material to them. There is no indication that Defendant was interested in the location of the accident or the type of cars involved, absent

1

Defendant also makes the related argument that the Illinois Traffic Crash Report that it obtained does not include any information from a DPPA-regulated "motor vehicle record." That argument also fails. First, Plaintiffs' Amended Complaint properly pleads that Defendant improperly obtained personal information from a DPPA-regulated "motor vehicle record." Dkt. No. 5 at ¶¶ 8-10, 13-15. Second, the DPPA broadly defines "motor vehicle record" to include "any record" that even "pertains" to motor vehicle title, registration *or* identification cards. 18 U.S.C. § 2725(3). The Illinois Traffic Crash Report *pertains* to Plaintiffs' car title, registration *and* driver's license. Third, the relevant information on the Illinois Traffic Crash Report was originally "issued" by the state department of motor vehicles ("DMV"), as no other source could originate certain information present on the report, such as driver's license number and license plate number.[3]

Plaintiffs' Amended Complaint properly pleads a violation of the DPPA. Defendant's Motion to Dismiss should therefore be denied.

## II. LEGAL STANDARD

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

---

the names and addresses of the persons who may have suffered personal injuries, which it could use to solicit business.

[3] The Illinois Traffic Crash Report *itself* need not have been *issued* by the DMV. According to the DPPA, the personal information at issue simply needed to come "from" a motor vehicle record, which can be any derivative record or any data that *pertains* to motor vehicle title, registration *or* identification cards. 18 U.S.C. § 2725(3).

2

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a motion to dismiss, the court accepts the complaint's factual allegations as true and draws all possible inferences in the plaintiff's favor. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).

### III.  FACTUAL BACKGROUND

Plaintiffs brought this class action against Defendant, alleging that it violates DPPA section 2722 by improperly obtaining and using name and address information from a motor vehicle record in order to send advertisements to solicit them and other potential clients. Plaintiffs' factual allegations are set out in detail in their Amended Complaint, Dkt. No. 5, and are incorporated by reference herein.

### IV.  ARGUMENT

The DPPA is intended to prevent the disclosure of personal information derived from motor vehicle records. It was passed in 1994 in part due to the murder of a young woman whose killer obtained her *address* from a motor vehicle record. Other concerns, such as those for the safety of domestic violence victims and peace officers, the prevention of identity theft, and the invasion of privacy also inform the DPPA's purpose. *See, e.g., Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 607-8 (7th Cir. 2012) (outlining the DPPA's purpose and legislative history).

Plaintiffs here allege that Defendant violated section 2722 of the DPPA, which provides:

> (a) Procurement for Unlawful Purpose. — It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721 (b) of this title.
>
> (b) False Representation. — It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722. Plaintiffs allege that Defendant obtained and used their personal information from a motor vehicle record in an impermissible way because they used that personal information

3

for the advertising of legal services and for the solicitations of new potential clients, an impermissible use under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191, 2195-96 (2013). The DPPA allows Plaintiffs to bring a private cause of action under 18 U.S.C. § 2724.

**A.      Plaintiffs Properly Plead that Defendant Knowingly Obtained Their "Personal Information" From a Motor Vehicle Record**

Defendant appears to argue that the scope of DPPA-protected personal information "does not include information on vehicular accidents, driving violations, and driver's status." Dkt. No. 15 at 7 (citing to 18 U.S.C. § 2725(3)). Defendant is mistaken. Although Defendant recites the relevant statutory definition, Plaintiffs do not allege that their cause of action stems from Defendant's obtaining information about their car accident, any related driving violations, or driver status. Plaintiffs claim that Defendant violated the DPPA by obtaining and using their *personal information* – primarily their names and address.[4]

The DPPA defines "personal information" follows:

> [I]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). As a threshold matter, there is no doubt that Plaintiffs plead that Defendant obtained and used their names and address as well as their driver's identification number and phone number, from a motor vehicle record in order to mail them certain advertising material. *See* Dkt. No. 5, Am. Compl. at ¶¶ 10-13, 20-21, and Ex. A thereto.

---

[4]     Had Defendant obtained and used information *only* about the car accident, any related driving violations or the driver's status, the exclusion that it cites would apply. But such information also would have been useless to Defendant. Defendant is a personal injury law firm seeking to solicit personal injury clients, not a research firm, for example, interested in highway safety which may wish to compile statistical information about the types of accidents or driving violations on certain roads at certain times of day.

The Illinois Traffic Crash Report at issue included *both* DPPA-protected personal information and car accident information, but that is of no moment. No construction of DPPA section 2722 permits "personal information" to be improperly obtained or disclosed if it happens to be co-mingled with a derivative report that also includes other information. As a practical matter, it is difficult to conceive of a motor vehicle record that contains *only* personal information and *no* other types of information.

Defendant's reading of the vehicular accident exception would allow the exception to swallow the rule. The privacy of personal information would be lost every time a business that wishes to advertise or engage in some other impermissible use of such information could find a record that includes both personal information and some type of driving violation or driver status information.

Moreover, the Seventh Circuit does not find such a construction of the DPPA persuasive. In *Senne v. Village of Palatine, Illinois*, the Seventh Circuit found that disclosure of personal information co-mingled with other information may still come within the scope of the DPPA. 695 F.3d 597, 609 (7th Cir. 2012). In *Senne*, the plaintiff received a parking ticket from the defendant village that included the plaintiff's "full name, address, driver's license number, date of birth, sex, height and weight" *as well as* "the officer's name and badge number[,] . . . the *parking offense*, . . . various information about the vehicle, including . . . license number and vehicle identification number ("VIN")." *Id*. at 600 (emphasis added). It was immaterial that the parking ticket contained information beyond the "personal information" that identified the plaintiff in that case. The

5

Seventh Circuit held that such a disclosure could violate the DPPA. *Id*. at 609.[5] Defendant cites no authority to the contrary.

Importantly, the *Senne* court also noted that "exceptions should not be read to eviscerate the rule they modify" with respect to the DPPA. 695 F.3d at 606. Defendant's interpretation of "personal information" here does just that by allowing the "information on vehicular accidents" exception to swallow the expressly included categories of personal information. Defendant's interpretation would lead to unintended results and undermine the privacy purposes of the DPPA. *See City of Chicago v. U.S. Dep't of the Treasury*, 423 F.3d 777, 781 (7th Cir. 2005) (refusing to interpret statutes to lead to absurdities or to defeat Congressional intent).[6]

Defendant cites to a short and general section of the congressional record, Dkt. No. 15 at 7, but there is no need to examine the legislative history of the DPPA here: DPPA section 2722 is clear and all of Defendant's arguments concern terms that are defined within the statute. Moreover the one sentence from Representative Moran about "accident information" from a lengthy congressional record does not change the above analysis.[7] It is generally true that access to accident information is not affected by the DPPA, and even personal information is accessible under the DPPA when a user has a permissible purpose. The Defendant here, however, did not

---

[5] The *Senne* plaintiff was ultimately unsuccessful because the Seventh Circuit eventually affirmed the district court's ruling that the disclosure of his personal information was authorized by one of the DPPA's permissible use exceptions. *Senne v. Village of Palatine, Ill.*, 784 F.3d 444, 446-47 (7th Cir. 2015).

[6] A more compelling interpretation of the exclusion of "information on vehicular accidents" from the DPPA's definition of "personal information" is that the exclusion refers to statistical data concerning the occurrence of traffic accidents. This interpretation comports with what Illinois law already makes available through the Secretary of State. 625 ILL. COMP. STAT. 5/11-412 (2015) ("The Secretary of State may also disclose notations of accident involvement maintained on individual driving records.").

[7] *See* http://www.gpo.gov/fdsys/pkg/CREC-1994-04-20/html/CREC-1994-04-20-pt1-PgH33.htm

6

have a permissible purpose for using personal information, and went well beyond obtaining just accident information or driver's status.

Nor was this a case where a person knew the name and address of a person involved in a car accident and then sought to obtain more information about the accident. This was a case of a user with an impermissible purpose (client solicitation through advertising) obtaining DPPA motor vehicle records in order to obtain the name and address that it did not possess.

If Defendant's reading of the limited "vehicular accidents" exception is correct, then any stalker could obtain personal information from an Illinois Traffic Crash Report or, for that matter, any other record relating to car accidents. Any motorist stopped on the side of any road for *any accident* or *any driving violation* could have their license plate number copied by any passerby, and, according to Defendant, then have his or her personal information disclosed or made available to anyone who wanted to know their name and where they lived. There is simply no basis to believe that this is the public policy behind the DPPA.

At the end of the day, based upon the plain text of the statute, Plaintiffs have properly pled that their "personal information" was obtained and used impermissibly under the DPPA to solicit them for legal services. Defendant's arguments regarding the co-mingling of personal information and accident information should be disregarded and its Motion should this be denied.

**B.     Plaintiffs Properly Allege That Defendant Knowingly Obtained, Disclosed Or Used Personal Information From A "Motor Vehicle Record"**

Defendant next appears to argue that the Illinois Traffic Crash Report is categorically not a "motor vehicle record" as defined by the DPPA at section 2725(1) and that therefore any personal information contained therein is outside the protections of the DPPA. Dkt. No. 15 at 7. Defendant ignores the extremely broad meaning of "motor vehicle record" and the fact that DPPA protects *personal information*, not *records*. Defendant's argument fails.

A "motor vehicle record" under the DPPA means "*any record* that *pertains* to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1) (emphasis added).

Plaintiffs clearly plead in their Amended Complaint that Defendant obtained their personal information "from a motor vehicle record." *See* Dkt. No. 5 at ¶¶ 8-10, 13-15, and Ex. A thereto. In a motion to dismiss, the Plaintiff's averments must be accepted as true, and therefore Defendant's view, to the extent that it is factually contrary, cannot be accepted. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009) (in motion to dismiss, the court accepts the complaint's factual allegations as true and draws all possible inferences in the plaintiff's favor).

The plain text of the DPPA at section 2725(1) is very broad. It encompasses "any record" that "pertains" to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles. 18 U.S.C. § 2725(1). Defendant seems to be arguing that DPPA "motor vehicle records" must be records that are *created* by the DMV or housed at the Illinois Secretary of State, the governing Illinois state DMV agency. Dkt. No. 15 at 7. The Illinois Traffic Crash Report is a "motor vehicle record," however, because it "pertains" to a DMV record—not because it "is" the original DMV record.

The Illinois Traffic Crash Report includes information such as Plaintiff's driver's license number and license plate as well as name and address information. *See* Dkt. No. 5, Ex. A. Driver's license numbers and license plates are, to Plaintiffs' knowledge, "issued" *only* by the DMV. The only reasonable inference under the facts alleged in the Amended Complaint is that the Illinois Traffic Crash Report included data (such as driver's license number and license plate number) that

was originally issued by the Illinois Secretary of State, although the same information may have been resold through a private supplier.[8]

The nature of a derivative record or intermediary communication that pertains to an original DMV record is not dispositive of whether personal information was improperly obtained from a DPPA motor vehicle record. *See e.g.*, *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 599 (7th Cir. 2012) (personal information on a parking ticket written by local police); *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 540 (7th Cir. 2008) (personal information disclosed verbally by police officer); *Best v. Berard*, 837 F. Supp. 2d 933, 935 (N.D. Ill. 2011) (personal information disclosed on reality television show). The Seventh Circuit has found DPPA-regulated information can be housed within the database of a publishing company and thereafter resold to third party users so long as the "ultimate use or uses to which personal information contained in motor vehicle records is put" is permitted by the DPPA. *Graczyk v. West Publishing Co.*, 660 F.3d 275, 279 (7th Cir. 2011).[9] What matters, therefore, is whether the personal information comes "from" a DPPA "motor vehicle record," which only needs to "pertain" to an original DMV record.

---

[8] Plaintiffs believe that discovery will show that a reseller was used here and will also show that the standard operating procedure for police officers responding to traffic accidents—indeed traffic stops of any sort—includes comparing information provided by the parties to the accident with information available to the officer from the Illinois Secretary of State's database via the officer's in-car computer. Such a check is necessary to determine if any of the parties are, for instance, driving on a suspended license, subject to any outstanding arrest warrants, etc. Officers also check the status of the vehicle's registration and insurance against information available in the state DMV's database. *Best v. Berard* is instructive on how these practices intersect with the DPPA. *Best v. Berard*, 837 F. Supp. 2d 933 (N.D. Ill. 2011). In *Best*, the plaintiff's personal information, displayed on a police officer's in-car computer, was captured on camera pursuant to the filming of a reality television program. *Id.* at 937. The footage aired and the plaintiff's personal information was visible for a few moments during the program. *Id.* at 941. The court, finding that there was sufficient information in the record to indicate that the personal information came from state DMV records, denied summary judgment to defendant on the plaintiff's relevant DPPA claims. *Id.* at 943. Likewise, in keeping with standard policing procedures, the instant Plaintiffs' personal information was undoubtedly corroborated with information obtained from the Illinois Secretary of State's database during the responding officer's generation of the traffic accident report.

[9] Unlike the plaintiff in *Graczyk*, Plaintiffs herein *do* allege that the ultimate recipient of the personal information—Defendant—did *not* have a permissible purpose for obtaining or using it.

9

An almost identical case currently pending in the Northern District of Indiana demonstrates why Defendant's arguments are unavailing. *See Whitaker v. Appriss, Inc.*, Case No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559 (N.D. Ind. Sept. 11, 2014). In *Whitaker*, the plaintiffs were involved in separate car accidents, and responding police officers completed an "Indiana Officer's Standard Crash Report" that included personal information about the plaintiffs. *Id.* at *2-3. Within a month of the accident, the plaintiffs received unsolicited letters from lawyers seeking to represent them in personal injury cases. *Id*. The plaintiffs then sued the information broker that sold the lawyers copies of their crash reports. *Id*. at *1.

The defendant in *Whitaker* moved to dismiss on the basis that the accident report was not a "motor vehicle record" as defined under the DPPA. *Id.* The district court, citing the Seventh Circuit in *Senne*, denied that defendant's motion to dismiss, finding that the personal information at issue could be found to be "associated" with (*i.e*., to pertain to) DPPA-protected records. *Id*. at *2. This Court should do the same.

Defendant's reliance upon *Mattivi v. Russell* is misplaced. Dkt. No. 15 at 7 (citing *Mattivi v. Russell*, No. Civ. A. 01-WM-533 (BNB), 2002 WL 31949898 (D. Colo. Aug. 2, 2002)). First, Defendant has misidentified the holding of the Colorado District Court. Rather than holding that the "accident report containing his name, address, phone number and driver's license number was found not to contain 'personal information' under the DPPA" (Dkt. No. 15 at 7), the court did not reach the issue of whether the report contained "personal information" at all. *Mattivi*, 2002 WL 31949898 at *2.

10

Further, the Colorado trial court's *Mattivi* decision is inapplicable and unpersuasive here for the same reasons it was distinguished in *Whitaker*. 2014 WL 4536559 at *5.[10] The *Mattivi* court, like Defendant here, seemed to assume that a *police record* was the *original DMV record*. *Mattivi*, 2002 WL 31949898 at *3. But that is simply not what Plaintiffs argue in the case at bar, or how the DPPA defines "motor vehicle record." A "motor vehicle record" can be "any record" (including a police record) that "pertains" to "motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

The reason for the broad definition is plain: if personal information from an auto title, registration card, or driver's license (or ID card) is to be protected from improper disclosure, any derivative versions of that *information* must also be protected. Otherwise, any handwritten copy, cell phone photograph, or electronic reproduction of an original DMV record could be used to improperly disclose personal information with impunity.

Plaintiffs' Amended Complaint has properly plead every element of a DPPA section 2722 violation, and Defendant has simply failed to show that no such claim is plausible as a matter of law.

---

[10] The Seventh Circuit also disagrees with the District Court of Colorado with respect to where the personal information was eventually disclosed—a newspaper. In its discussion of the *Senne* plaintiff's claim, the Seventh Circuit noted that:

> *There is an argument for placing identifying information such as height and weight on a ticket placed face down under a windshield wiper, but it would be at once unnecessary and an offensive invasion of privacy to place that information in a newspaper, on a billboard, or on the police department's website.* The balance between law enforcement and privacy favors allowing discreet disclosure of limited information of credible value to law enforcement, since the potential harm of such disclosure is negligible but the benefits nonnegligible.

*Senne v. Village of Palatine, Illinois*, 784 F.3d 444, 448 (7th Cir. 2015) (emphasis added).

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

DATED: June 25, 2015 Respectfully submitted,

By: /s/Jordan M. Sartell
Roger Zamparo, Jr.
Jordan M. Sartell
ZAMPARO LAW GROUP, P.C.
1600 Golf Road, Suite 1200
Rolling Meadows, IL 60008-4229
(224) 875-3202 (t)
(312) 276-4950 (f)
roger@zamparolaw.com
jordan@zamparolaw.com

James A. Francis*
John Soumilas*
FRANCIS & MAILMAN, P.C.
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600(t)
(215) 940-8000(f)

*Attorneys for Plaintiffs and Classes*

*Admitted *Pro Hac Vice*

12

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this day, the foregoing was filed electronically through the CM/ECF system with the Clerk of the Court for the United States District Court for the Northern District of Illinois, Eastern Division, and was served upon all counsel of record.


Dated: June 25, 2015                           */s/Jordan M. Sartell*
                                                                 Jordan M. Sartell