IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAVONE, PAVONE, AND M.P., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 15 C 1538 |
| | ) |
| THE LAW OFFICES OF ANTHONY MANCINI, LTD., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs filed suit on behalf of a class of similarly-situated individuals against the Law Offices of Anthony Mancini, Ltd. (Mancini), alleging that the law firm obtained Illinois traffic crash reports and used the information in those reports to send targeted solicitations to persons involved in car accidents, in violation of the Driver's Privacy Protection Act (DPPA). Plaintiffs attached to their complaint documents that Mancini sent to plaintiff Antonio Pavone, including a solicitation letter and a copy of a crash report that listed his name, date of birth, address, license plate number, driver's license number, and his car's make and model. Mancini has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The Court denies the motion to dismiss for the reasons stated below.

### Discussion

When considering a motion to dismiss, the Court accepts plaintiffs' allegations as true and draws reasonable inferences in their favor. *Parish v. City of Elkhart*, 614 F.3d

677, 679 (7th Cir. 2010). In order to state a viable claim, plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The DPPA prohibits knowingly obtaining, disclosing, or using "personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. §§ 2722, 2724. Mancini argues that the DPPA does not apply in this case because the DPPA excludes accident reports from the definition of protected "personal information" and because crash reports are not "motor vehicle records." Mancini also argues that even if the Court finds the DPPA applicable, the law firm's use of the crash reports falls within one of the permitted-use exceptions. *Id.* § 2721(b)(14).

**A.    Personal information**

Mancini argues that the complaint fails to state a claim because crash reports do not constitute "personal information" under the DPPA. *Id.* §§ 2721, 2722. The DPPA defines "personal information" as "information that identifies an individual . . . but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). One court has concluded that accident reports do not constitute "personal information," because "the plain language of [the] exception in section 2725[ ] makes clear that Congress did not intend 'information on vehicular accidents' to be included within the Act's prohibition of disclosure of 'personal information.'" *Mattivi v. Russell*, No. CIV.A. 01-WM-533(BNB), 2002 WL 31949898, at *4 (D. Colo. Aug. 2, 2002). But the statute does not exclude accident reports from the definition of "personal information"; it only excludes "*information on vehicular accidents [and] driving violations.*" 18 U.S.C. § 2725(3) (emphasis added). Based on the plain language of the

2

statute, the exclusion refers to information about the accident, not the personal information that is included in accident reports. The driver's address, license plate number, and license number do not involve information about the accident, and thus they do not constitute "information on vehicular accidents." *See Whitaker v. Appriss, Inc.*, No. 3:13-CV-826-RLM-CAN, 2014 WL 4536559, at *2 (N.D. Ind. Sept. 11, 2014) ("The parties agree[d] that the DPPA considers certain information set forth in the accident reports, such as driver identification numbers, names, and addresses, to be personal information.").

Seventh Circuit precedent supports the conclusion that the DPPA protects personal information listed in accident reports. The Seventh Circuit has interpreted "personal information" broadly to include information that is not listed in the statutory definition. *See Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943–44 (7th Cir. 2015). "Personal information" should be interpreted broadly in this instance as well, as protecting personal information in accident reports serves the two purposes of the DPPA—"to prevent stalkers and criminals from utilizing motor vehicle records to acquire information about their victims" and "to protect against the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Id.* (internal quotation marks omitted). In sum, information in crash reports can constitute personal information.

**B.    Motor vehicle records**

Mancini also argues that crash reports are not motor vehicle records under the DPPA. A motor vehicle record is "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a

department of motor vehicles." 18 U.S.C. § 2725(1). To "pertain to" one of the documents listed in the statute, the record must be "a part, member, accessory, or product of" one of the documents. *Lake v. Neal*, 585 F.3d 1059, 1061 (7th Cir. 2009) (holding that voter registration forms were not motor vehicle records because they had "nothing to do with . . . a motor vehicle operator's permit"). An accident report is not a motor vehicle record, because it is not "a part, member, accessory, or product of" any of the listed records.

Nevertheless, the DPPA also protects personal information obtained "*from* a motor vehicle record." 18 U.S.C. § 2722(a) (emphasis added). Thus, even if a document is created by the police, the DPPA protects any information in the report that the police obtained *from* the motor vehicle record. *See Senne v. Vill. of Palatine*, 695 F.3d 597, 599 (7th Cir. 2012) (en banc) (holding that parking tickets issued by the Palatine police that included information obtained from DMV records "constitute a disclosure regulated by the DPPA"). As one court concluded, "If the original source of the other government agency's information is the state department of motor vehicles, the DPPA protects the information throughout its travels." *Whitaker*, 2014 WL 4536559, at *4. There, the court denied a motion to dismiss a case in which an attorney used police accident records to solicit clients, because "it's plausible that the personal information in the accident reports was obtained from the state department of motor vehicles" rather than directly from the plaintiffs. *Id.* at *5. The Court finds this analysis persuasive and respectfully disagrees with the contrary conclusion of another district court. *See Mattivi*, 2002 WL 31949898, at *4.

The key question is whether the Illinois Secretary of State was the original source

4

of the information. As the Seventh Circuit has stated, "The DPPA proscribes only the publication of personal information that has been obtained from motor vehicle records. The origin of the information is thus crucial to the illegality of its publication." *Dahlstrom*, 777 F.3d at 949–50. Plaintiffs have plausibly alleged that the information listed on the crash reports came from motor vehicle records produced by the Secretary of State. They allege "[u]pon information and belief" that "Mancini knowingly obtained a copy of the Report from the Schaumburg Police Department, and/or the Illinois Secretary of State directly and/or through a private entity supplier of such motor vehicle records as part of Mancini's regular practice and procedure of obtaining such records for advertising and solicitation purposes." Am. Compl. ¶ 13. Even if the Secretary of State does not share this information with private parties, it is also plausible that officers obtain the information on the crash reports at issue here from a Secretary of State database. And even if that information is not directly supplied by the Secretary of State, it is plausible that officers who write the crash reports copy the name, license number, and address from the driver's license, which is a motor vehicle record. 18 U.S.C. § 2725(1). Plaintiffs have thus plausibly alleged that the crash reports contain information that has been obtained from motor vehicle records.

**C.    Permitted use**

Despite its general prohibition, the DPPA lists fourteen permitted uses of personal information obtained from motor vehicle records. *Id.* § 2721(b). For the first time in its reply, Mancini argues that even if the DPPA is applicable, one of the exceptions applies. Under the asserted exception, personal information "may be disclosed . . . [f]or any other use specifically authorized under the law of the State that

holds the record, if such use is related to the operation of a motor vehicle or public safety." *Id.* § 2721(b)(14).[1] Mancini argues that because the crash reports are created after an accident, they are related to the operation of a motor vehicle. But Mancini's use of the report was not related to the operation of a motor vehicle. According to the complaint, Mancini obtained the crash reports and used their contents to solicit business. Under the DPPA, the Court must consider the ultimate user's treatment of the personal information. *See Graczyk v. W. Pub. Co.*, 660 F.3d 275, 279 (7th Cir. 2011) ("What is apparent from considering the DPPA as a whole is that it is concerned with the ultimate use or uses to which personal information contained in motor vehicle records is put."). Thus, each person who obtains a motor vehicle record or discloses its contents must use the information for a permissible purpose. *See id.* at 280–81; *see also Senne*, 695 F.3d at 606 ("[T]he actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is *used* for the identified purpose. When a particular piece of disclosed information is not *used* to effectuate that purpose in any way, the exception provides no protection for the disclosing party."). Based on the facts alleged in the complaint, Mancini's use does not fall within the section 2721(b)(14) exception.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss [dkt.

---

[1] Mancini does not assert any of the other statutory exceptions in the motion to dismiss. The Supreme Court has held that "an attorney's solicitation of clients is not a permissible purpose covered by the (b)(4) litigation exception," which allows information to be used "in connection with any civil, criminal, administrative, or arbitral proceeding." *Maracich v. Spears*, 133 S. Ct. 2191, 2196 (2013); 18 U.S.C. § 2721(b)(4). Nor does the exception for solicitations apply, because the state has not "obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. § 2721(b)(12).

6

no. 15]. Defendant is directed to answer the complaint by no later than August 13, 2015. The case is set for a status hearing on August 20, 2015 at 9:00 a.m. in chambers (Room 2188) for the purpose of setting a discovery and pretrial schedule and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 28, 2015