**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTONIO PAVONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 1538 |
| ) | |
| LAW OFFICES OF ANTHONY ) | |
| MANCINI, LTD., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Antonio Pavone alleges that the Law Offices of Anthony Mancini, Ltd.,[1] violated section 2722 of the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2722(a), by obtaining Pavone's personal information from a motor vehicle record, for a use not permitted by the DPPA. He seeks an award of statutory and punitive damages. Mancini has moved for entry of summary judgment. For the reasons stated below, the Court denies Mancini's motion but orders further briefing on the question of Pavone's standing to sue.

### Facts

On January 15, 2015, Pavone was involved in an automobile accident, and his wife and child were in the vehicle with him. An officer from the Schaumburg Police Department arrived on the scene. During his deposition, Pavone testified that the

---

[1] Because Anthony Mancini is the president and sole owner of the law firm, the Court will simply use the term "Mancini" to refer to both Mr. Mancini and the law firm.

officer asked for his driver's license and insurance card and also asked him to describe how the accident had happened.  The officer also asked Pavone who was in the car with him (and Pavone provided this information), but aside from these questions, the officer asked nothing else.  Pavone stayed in his car during the encounter.  The officer later returned Pavone's license and insurance card, and he also gave Pavone a printout of a "driver exchange form," which provides information from and regarding the crash report.

Within days of the accident, Mancini, a Chicago attorney, ran a search for Illinois crash reports on a website owned by iyeTek, LLC, a third-party provider that sells crash reports and crash report preparation software.  Mancini testified that he searched crash reports on the site to solicit business for his law firm.  He found and purchased the report of Pavone's accident.  He had no prior acquaintance with Pavone.

Mancini then sent a letter to Pavone's home address, which he obtained from the crash report.  In the letter, Mancini said he understood that Pavone may have suffered injuries in an automobile accident, and he solicited Pavone to retain him to recover compensation.  Am. Compl., Ex. A.  With the letter, Mancini sent a copy of the crash report concerning Pavone's accident.  The report contained Pavone's name, home address, telephone number, date of birth, gender, and driver's license number.

Pavone filed this lawsuit about four weeks later.  His wife and son were included as plaintiffs.  The Court denied Mancini's motion to dismiss in July 2015.  *Pavone v. Law Ofcs. of Anthony Mancini, Ltd.*, 118 F. Supp. 3d 1004 (N.D. Ill. 2005).  The claims of Mrs. Pavone and the Pavones' child were voluntarily dismissed with prejudice in March 2016.

## Discussion

The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains" for actual or statutory damages, punitive damages, and attorney's fees. 18 U.S.C. § 2724(a), (b). "'[P]ersonal information' means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3). "'[M]otor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* § 2725(1).

Mancini has moved for summary judgment on several grounds. First, he argues that the DPPA does not apply because crash reports are not motor vehicle records. Second, he contends that the DPPA concerns only records that originated with the Illinois Secretary of State or that were obtained from the Secretary of State, which he says is not the case with the records he obtained. Third, Mancini argues that Pavone cannot show that he knowingly obtained personal information covered by the DPPA. Fourth, Mancini contends that his actions are exempt due to state law. Fifth, he argues that if Pavone's theory of liability is viable, the DPPA runs afoul of the First Amendment. Sixth, Mancini questions the Court's subject matter jurisdiction, contending that Pavone has not suffered a concrete harm that provides him with standing to sue under Article III

3

of the U.S. Constitution.

Summary judgment is proper when the moving party shows that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, based on the record, a reasonable fact finder could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court views the evidence in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *See, e.g.*, *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 825 F.3d 788, 791 (7th Cir. 2016). To survive summary judgment, the nonmoving party must show that a reasonable fact finder could find in its favor on each essential element of its case on which it bears the burden of persuasion. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007).

**1.   Obtaining and using personal information**

It appears undisputed that Mancini obtained from the crash report, and used, Pavone's name, home address, driver identification number (driver's license number), date of birth, gender, and telephone number. All of this constitutes personal information as the DPPA defines that term. The first three items are specifically enumerated in the statute's definition of personal information found in 18 U.S.C. § 2725(3). But "personal information" is not limited to the specifics listed in the statute; it means *any* "information that identifies an individual," which includes, but is not limited to, the listed items. *Id.; see Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir.), *cert. denied*, 136 S. Ct. 689 (2015). The other items of information at issue meet the statute's definition and thus qualify as personal information. *See id.* at 944. As the Court stated in denying

4

Mancini's motion to dismiss, the statutory term is appropriately interpreted broadly, because "protecting personal information . . . serves the two purposes of the DPPA—to prevent stalkers and criminals from using motor vehicle records to acquire information about their victims and to protect against the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Pavone*, 118 F. Supp. 3d at 1006 (citing *Dahlstrom*, 777 F.3d at 943–44) (internal quotation marks omitted)

Mancini argues that the DPPA provides a plaintiff with a cause of action only if an officer, employee, or contractor of a department of motor vehicles has obtained, used, or disclosed the plaintiff's personal information from a motor vehicle record. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 4–5. The Court disagrees. Though 18 U.S.C. § 2721 imposes upon employees or contractors of a department of motor vehicles a prohibition against disclosure of personal information, the prohibitions in section 2722 or section 2724 are not limited in that way. Section 2722 makes it unlawful "for *any person* knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a) (emphasis added). And section 2724, the provision of the DPPA that confers a private right of action, likewise imposes civil liability upon "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter . . . ." *Id.* § 2724(a).

2. **From a motor vehicle record**

In order for there to be civil liability under for the DPPA, the information must be personal information "from a motor vehicle record." *Id.* The Court has previously ruled

5

that a crash report (an accident report) is not a motor vehicle record within the meaning of the statute, *see Pavone*, 118 F. Supp. 3d at 1007, and it sees no basis to revisit that ruling here.

Mancini argues, as he did on his motion to dismiss, that this is the end of the story, because the crash report is all he obtained and used. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 1–2. The Court rejected this argument when it denied Mancini's motion to dismiss and reaffirms that ruling now. The DPPA does not simply proscribe obtaining and using motor vehicle records; rather, it imposes liability on any person who "knowingly obtains, discloses, or uses personal information, *from* a motor vehicle record." 18 U.S.C. § 2724(a) (emphasis added). As the Court previously ruled, given the wording of the statute, "even if a document is created by the police, the DPPA protects any information in the report that the police obtained *from* the motor vehicle record." *Pavone*, 118 F. Supp. 3d at 1007 (citing *Senne v. Vill. of Palatine*, 695 F.3d 597, 599 (7th Cir. 2012) (en banc) (parking tickets issued by the police that include information obtained from DMV records "constitute a disclosure regulated by the DPPA")). "[I]f the original source of the other government agency's information is the state department of motor vehicles, the DPPA protects the information throughout its travels." *Whitaker v. Appriss, Inc.*, No. 3:13–CV–826–RLM–CAN, 2014 WL 4536559, at *4 (N.D. Ind. Sept. 11, 2014).

To put it another way, contrary to Mancini's argument, the Court sees no appropriate basis in the language of the statute to read the term "from a motor vehicle record" to limit liability to situations involving disclosure or use of personal information that the defendant himself got directly from a state department of motor vehicles. *See*

6

Def.'s Mem. in Supp. of Mot. for Summ. J. at 8. Among other things, were this the case, there would be no need for section 2724(a) to limit liability to persons who "knowingly" obtain or use personal information from a motor vehicle record—because a person who gets the information directly from a state agency quite obviously knows that is where he is getting the information.

The parties dispute the original source of the information that Mancini obtained. There is no evidence that Pavone gave the officer any of the information verbally. Mancini appears to contend that the information came from Pavone's driver's license, which, he argues, is not a motor vehicle record. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 11, 12. All or nearly all of the information in question (name, address, driver's identification number, date of birth) appears on an Illinois driver's license, and Pavone testified that he gave the officer his driver's license, so there is evidence supporting the proposition that Pavone's license was the source of the information.

Pavone appears to contend that the information in question came from an Illinois Secretary of State database that the Schaumburg officer accessed. He has not offered any admissible evidence of this, however. The officer has not testified regarding how the information got onto the crash report, and Pavone has offered no affidavit or testimony from any witness who has personal knowledge of how the iyeTek software works. Rather, Pavone has offered only an affidavit from his lawyer, Jordan Sartell. Sartell says that in March 2016, he downloaded a file from the iyeTek website that describes how the crash report preparation software works as follows:

> Input the license plate [sic] of the vehicles and swipe the driver's licenses of involved parties in the accident, and iyeCrash will gather information from the Secretary of State's (SOS) or Department of Motor Vehicles' (DMV) records to populate the crash report. Finish crash reports in record

7

time with no errors using this simple and intuitive form based system.

Pl.'s LR 56.1 Stat., Sartell Affid., Ex. 1; *see also id.*, Ex. 3 (other material downloaded from iyeTek website similarly explaining how software works). Based on this, Pavone contends that everything in the crash report came from the Secretary of State's records.

A party opposing summary judgment must, however, "point to evidence that can be put in an admissible form at trial" that would support judgment in his favor. *See Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011). All Pavone's lawyer can legitimately say that the explanation was on iyeTek's website; he has no personal knowledge regarding whether the explanation represents an accurate description of how the iyeTek software works. In short, the lawyer's statement that he downloaded the material from the website is an insufficient foundation for the material's admissibility.

For this reason, Pavone has offered no admissible evidence that the information on the crash report came directly from a Secretary of State database. The only source for the information on the crash report that is supported by admissible evidence in the record is Pavone's driver's license.

That said, information obtained from a driver's license *is* information obtained from a motor vehicle record; the Court rejects Mancini's contrary argument. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 11. Mancini cites several cases that he says stand for the proposition that there is civil liability under the DPPA only if the personal information comes straight from the department of motor vehicles and that there is no viable claim if the information is obtained from the plaintiff's driver's license. *See id.* at 7–8 (citing *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014); *Ocasio v. River Bay Corp.*, No. 06 Civ. 6455, 2007 WL 1771770, at *1 (S.D.N.Y. June 19, 2007);

*O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933, 935 (N.D. Ill. 2002)). The Court notes that in each of these cases, the plaintiff was under no legal compulsion to turn over his or her driver's license to a government actor; in Pavone's case, the contrary is true, a point the Court will discuss momentarily. But to the extent the decisions that Mancini cites are inconsistent with this one, the Court respectfully disagrees with them. The statute expressly defines the term "motor vehicle record" to include "any record that pertains to a motor vehicle operator's permit," which means that any record that pertains to a driver's license *is* a motor vehicle record. 18 U.S.C. § 2725(1). As the Court noted in its ruling on Mancini's motion to dismiss, the Seventh Circuit has stated that a record "pertains to" a motor vehicle record if it "belong[s] as a part, member, accessory, or product" of such a record. *Lake v. Neal*, 585 F.3d 1059, 1060–61 (7th Cir. 2009). A driver's license number and the other information contained on a driver's license is, without question, "part" of a motor vehicle operator's permit. Thus information from a driver's license is information from a motor vehicle record. And the statutory language offers no basis to limit liability to those who obtain driver's license information from the state department of motor vehicles but absolve those who knowingly get it from the driver's license itself.

Mancini argues that Pavone disclosed the information himself voluntarily and that he cannot sue Mancini for obtaining or using information that he (Pavone) voluntarily turned over. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 11, 12. This argument finds no basis in the statute. The DPPA permits a state to disclose a driver's personal information in response to a request for records "if the State has obtained the express consent of the person to whom such personal information pertains," 18 U.S.C. §

9

2721(b)(11), but it defines express consent as "consent in writing," id. § 2725(5), which is lacking here.[2] Moreover, a significant portion of the information in motor vehicle records held by the Illinois Secretary of State—a person's name, home address, phone number, date of birth, and so on—is given voluntarily to the Secretary of State when one applies for a driver's license. Yet it is as clear as day that the DPPA expressly prohibits disclosure of this information. Nothing is different about Pavone's supposedly voluntary turnover of his driver's license to the Schaumburg officer.

In any event, a reasonable jury could find that Pavone's handing of his license to the officer was anything but voluntary. Under Illinois statute, a driver is required to display his driver's license when a police officer requests it, and the statute defines "display" as "the manual surrender of his license certificate into the hands of the demanding officer for his inspection thereof." 625 Ill. Comp. Stat. 5/6-112.

Mancini also argues that it does not violate the law for him to disclose Pavone's information to Pavone himself. See Def.'s Mem. in Supp. of Mot. for Summ. J. 19–, 20. The Court agrees; Pavone has articulated no viable argument for how it could violate the DPPA for Mancini to provide Pavone with his own information. But that does not mean Pavone's suit comes to an end. The DPPA does not just prohibit disclosure; it also prohibits obtaining or using personal information from a motor vehicle record. Mancini indisputably obtained and used the information that is at issue.

For these reasons, the Court concludes that Pavone has offered evidence from which a reasonable jury could find that Mancini obtained and used personal information

---

[2] The DPPA formerly permitted a state to obtain a driver's "implied consent" from the driver's failure to block disclosures when obtaining or renewing a license, but the statute was amended in 1999 to require express consent. See Reno v. Condon, 528 U.S. 141, 144–45 (2000).

10

about him from a motor vehicle record.

**3.     Knowingly**

The next question is whether a reasonable jury could find that Mancini acted knowingly as the DPPA uses that term. The statute does not contain its own definition of knowing conduct. But this element does not require proof that the defendant knew he was obtaining, using, or disclosing information illegally. "Voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element of the DPPA." *Senne v. Vill. of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012) (en banc).

The Court concludes, as Mancini argues, *see* Def.'s Mem. in Supp. of Mot. for Summ. J. at 14–16, that Pavone must offer evidence from which a reasonable jury could find that Mancini knew that the information he had obtained or used was personal information from a motor vehicle record. *Accord, Pichler v. UNITE*, 228 F.R.D. 230, 242 (E.D. Pa. 2005) ("a plaintiff must prove that (1) the defendant knowingly obtained, disclosed, or used personal information from her motor vehicle records; and (2) the purpose of such obtaining, disclosure, or use was not permissible. The plaintiff need not show that the defendant knew that the obtaining, disclosure, or use was impermissible.") This is the most natural reading of the statute; it is not enough to knowingly disclose personal information that just happens to come from a motor vehicle record. If the statute did not require knowledge of the source of the information, it would, for example, violate the DPPA to receive—that is, to obtain—a person's name and address just because the original source was a motor vehicle record, even if the recipient had no idea that was where the information came from. This would be an

absurd result that would not advance Congress's purpose in enacting the DPPA. *Cf. KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 729 (7th Cir. 2013) (statutes are to be interpreted to avoid absurd results if an alternative interpretation consistent with the statutory purpose is available). The Court sees no support for Pavone's proposed interpretation of the term "knowingly."

It is undisputed that Mancini obtained all of the information he had about Pavone from the crash report. And the Court has already concluded that the crash report, itself, is not a motor vehicle record. So the question is whether there is evidence from which a reasonable jury could find that Mancini knew that any of the information he had obtained came from a motor vehicle record, specifically from a driver's license. The only evidence before the Court from which one may draw such an inference is the information itself; Pavone has offered no evidence that Mancini knows how crash reports are created in general or how this crash report was created in particular. Of the various items of information at issue, the only item whose very nature would permit a reasonable inference of knowledge of its source is Pavone's driver's license number. Specifically, a reasonable jury could find that it would be readily apparent to anyone in Mancini's position that a driver's license number comes from a driver's license—that is, from a motor vehicle record as the DPPA uses that term. The same cannot be said about the other information that Mancini obtained via the crash report, specifically, Pavone's name, address, date of birth, and telephone number. Absent any evidence other than the information itself, no reasonable jury could find that Mancini would have known from the nature of this information on the crash report that it came from Pavone's driver's license as opposed to, for example, verbally from Pavone himself.

### 4. Purpose not permitted by the DPPA

Pavone has offered evidence sufficient for a reasonable jury to find that Mancini knowingly obtained and used Pavone's driver's license number for a purpose not permitted by the DPPA. As the Court has previously ruled, one "must consider the ultimate user's treatment of the personal information." *Pavone*, 118 F. Supp. 3d at 1008 (citing *Graczyk v. West Pub. Co.*, 660 F. 3d 275, 279 (7th Cir. 2011)). Mancini testified that he purchased the crash report in order to solicit business for his law practice. This is not a permitted use under the DPPA. *See Maracich v. Spears*, 133 S. Ct. 2191, 2196 (2013).

Mancini contends that his use of the information is permitted because the Schaumburg police officer obtained the information for an appropriate purpose under the DPPA. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 12–13. That is not a defense. The DPPA's civil liability provision imposes liability on a person who obtains, uses, or discloses information for a purpose not permitted by the statute. 18 U.S.C. § 2724(a). This language focuses on the purpose for which the defendant obtained, used, or disclosed the information, not on whether someone else acted legally in gathering the information in the first instance. The state department of motor vehicles in *Maracich* had legally gathered the information at issue in that case, but that did not immunize from liability the attorneys who obtained and used that information to solicit potential clients. The Court focused on the defendants' purpose in obtaining and using the information, not on whatever purpose the state agency had in obtaining and disclosing it in the first place. *See also Graczyk*, 660 F.3d at 279 (the DPPA "is concerned with the ultimate use or uses to which personal information contained in

13

motor vehicle records is put.").

Finally, Mancini argues that the Court's construction of the DPPA conflicts with state laws that permit law enforcement to disclose crash reports. The Court does not see this as a basis to read the statute differently. As the Supreme Court noted in *Maracich*, the DPPA was *intended* to alter the states' common practice of selling personal information from motor vehicle records, see *Maracich*, 133 S. Ct. at 2204, and in *Reno*, the Court held that Congress's adoption of the DPPA did not run afoul of the Tenth Amendment or the principles of federalism it embodies. *See Reno*, 528 U.S. at 149–51.

Mancini cites a number of Illinois statutes that he says call for disclosure of crash reports. With one exception, however, these statutes require drivers or the police to report accidents to a governmental authority under various circumstances; they do not call for disclosure of such reports to the public, lawyers like Mancini, or anyone else. *See* 625 Ill. Comp. Stat. 5/11-403, 11-406, 11-408. One statute that Mancini cites allows local law enforcement agencies to sell crash reports for a fee, *see id.* 11-416, but this is arguably the very sort of state law that Congress intended to alter when it adopted the DPPA. In any event, that law does not mandate disclosure of every bit of personal information contained in crash reports. Indeed, although Mancini cites the Illinois Freedom of Information Act as shielding him from liability under the federal DPPA (a proposition that, the Court suggests, essentially turns the Constitution's Supremacy Clause on its head), the state's FOIA has been held to exempt state agencies from disclosing personal information on an individual, such as a driver's name, address, or driver's license number. *See Heinrich v. White*, 2012 IL App (2d) 110564, ¶

18, 975 N.E.2d 726, 732 (2012). In sum, Illinois law does not provide Mancini with a refuge from DPPA liability.

**5.    First Amendment**

Mancini argues that if the Court adopts the interpretation of the DPPA urged by Pavone, the statute's restrictions on disclosure of information run afoul of the First Amendment. See Def.'s Mem. in Supp. of Mot. for Summ. J. at 20–24. Because Pavone's claim has been narrowed to his allegations that Mancini obtained and used his personal information, not that he disclosed it (there was no disclosure, or even a risk of disclosure, to anyone other than Pavone himself), Mancini's First Amendment argument appears to be moot.

Assuming that Mancini continues to assert his First Amendment challenge with regard to the DPPA's restrictions on obtaining a driver's personal information from motor vehicle records, his argument lacks merit. The Seventh Circuit held in *Dahlstrom* that there is no First Amendment right of access to government-created records, at least not to motor vehicle records of the type regulated by the DPPA. *Dahlstrom*, 777 F.3d at 947. The court determined that the DPPA's prohibition on obtaining personal information from motor vehicle records required only review for whether the statute has a rational basis. *Id.* at 949. It concluded that "[b]ecause limiting public access to driving records is rationally related to the government's legitimate interest in preventing stalkers and criminals from acquiring personal information from state DMVs," the DPPA's restrictions on obtaining information satisfied the rational basis requirement. *Id.* This holding in *Dahlstrom* is fatal to Mancini's First Amendment challenge.

### 6. Standing

Finally, Mancini argues, citing the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), that Pavone has not established an injury sufficient to confer standing under Article III of the Constitution. Because this area of the law is still in development, and because the Court has now limited Pavone's claim under the DPPA to a violation of the statute's prohibitions on obtaining and using information, as opposed to its prohibition on disclosing information, the Court believes that further briefing is required before it rules on the issue of Pavone's standing.

### Conclusion

For the reasons stated above, the Court denies defendant's motion for summary judgment [dkt. no. 37], while reserving the question of standing under Article III raised by defendant. Plaintiff is directed to file a supplemental memorandum of no more than 7 pages, addressing only the standing issue, by no later than September 21, 2016. Defendant is directed to file a supplemental reply of no more than 7 pages, likewise addressing only the standing issue, by no later than September 28, 2016. Plaintiff's motion to amend his complaint to join Mancini Law Group, L.P. as successor in interest to the current defendant is terminated without prejudice to filing an amended motion [dkt. no. 51].

Date: September 7, 2016

_____
MATTHEW F. KENNELLY
United States District Judge