IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO PAVONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15 C 1538 |
| | ) |
| THE LAW OFFICES OF | ) |
| ANTHONY MANCINI, LTD., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Anthony Pavone has sued the Law Offices of Anthony Mancini, Ltd. (Mancini), alleging that Mancini violated section 2722 of the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2722(a). In earlier rulings, the Court dismissed a number of Pavone's claims but declined to enter summary judgment against him on his claim that that Mancini obtained and used his driver's license number in violation of the DPPA. Familiarity with these rulings is assumed. *See generally Pavone v. Law Ofcs. of Anthony Mancini, Ltd.*, No. 15 C 1538, 2016 WL 4678311 (N.D. Ill. Sept. 7, 2016).

In the summary judgment decision, the Court deferred ruling on the question of Pavone's standing to sue under Article III of the United States Constitution in light of the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). After considering additional briefs, the Court found that Pavone is, in fact, alleging the type of injury that Congress sought to prevent and redress in the DPPA, specifically, injury arising from invasion of personal privacy. *Pavone v. Law Ofcs. of*

*Anthony Mancini, Ltd.*, No. 15 C 1538, 2016 WL 7451628, at *2 (N.D. Ill. Dec. 28, 2016). The Court also concluded that "a violation of the right to privacy results in the sort of harm that provides an appropriate basis for a lawsuit." *Id.* The Court further concluded that "an injury suffered by an individual that results from obtaining and using his private information in violation of the DPPA—the type of injury that Pavone claims to have suffered—is sufficiently concrete and particularized to confer Article III standing." *Id.* The Court also concluded that this is "the type of injury that can be redressed by a favorable judicial decision in Pavone's case, namely by an award of damages." *Id.* The Court ruled that because Pavone had provided evidence sufficient to permit a finding that Mancini's alleged violation of the DPPA caused him this sort of injury, Mancini was not entitled to summary judgment on the basis of lack of standing. *Id.*

This, however, did not dispose of Mancini's challenge to Pavone's standing. Mancini asserted a "factual" challenge to standing (as opposed to a facial challenge), meaning that Pavone must establish standing by a preponderance of the evidence. *Id*. Pavone's deposition testimony about his injury concerned all of his DPPA claims as a group and did not parse out the single claim—regarding obtaining and using his driver's license number—that the Court determined could survive. The Court concluded that for this reason, an evidentiary hearing would be required. *Id.*

### The evidence

The evidentiary hearing was held on February 17, 2017. Two witnesses were called to testify: Pavone and David Macek, an investigator hired by defense counsel.

Pavone testified that he was in an automobile accident in January 2015. Later that month, he received in the mail advertising material from Mancini. This included a

2

letter from Mancini stating that he had become aware that Pavone "may have been in [sic] an innocent victim of an automobile accident, and . . . may have suffered serious injuries as a result of the accident." Mancini offered to meet with Pavone without charging him a fee to advise him of his legal rights and to negotiate to have his car repaired "at no additional charge." Mancini's letter indicated that further representation beyond that would be on a contingent fee basis. He also included a brochure describing the services offered by the law firm.

Accompanying Mancini's solicitation was an apparently complete and unredacted copy of a Illinois Traffic Crash Report prepared by a Schaumburg police officer. It included Pavone's full name and home address, telephone number, date of birth, driver's license number, and detailed identifying information about his vehicle. it also included the names, addresses, and dates of birth of the car's other occupants, Pavone's wife and their child. It included the same information (name, address, date of birth, driver's license number, telephone number, and vehicle information) regarding the other driver involved in the accident, along with the fact that this individual had been issued a citation for failure to reduce speed to avoid an accident.

Pavone testified that when he realized that the Mancini law firm had his driver's license number, "I thought I was a victim of identity theft. I was angry and frustrated because I didn't provide this information to this guy, why is he soliciting me." Pavone further testified that he was "very upset" and did not understand why a stranger would have his driver's license number and the other information in the report, including his family's names and dates of birth. "[I]t was everything out there without my permission. I didn't provide it to this guy." With regard to his driver's license, Pavone stated that he

keeps it on his person at all times and does not share it "unless it's for a government agency that requires it or someone I'm doing business with," such as when the police officer directed him to show his license at the accident scene. Regarding Mancini's possession of his driver's license number, Pavone stated that he was very concerned because he did not know how Mancini might have stored the information and was afraid it could be misused or misplaced.

On cross-examination, Pavone said that before receiving the materials from Mancini, he had received a copy of the crash report from a different law firm. He said that both instances made him equally upset. He acknowledged that he is not claiming any physical injuries and that he has not seen a psychiatrist for his claimed distress.

Pavone also acknowledged that he has received traffic citations in the past. He said he was unaware of whether the clerk of court stored his information in public records as a result of those traffic citations. Defense counsel read a driver's license number to Pavone from a printout obtained from the clerk's office of the Circuit Court of Cook County. Pavone said that this was *not* his correct driver's license number (it turns out that the clerk's record had a digit missing). He said that he was not aware whether his driver's license number—or, perhaps, an inaccurate driver's license number—was available at a public access terminal in the court clerk's office.

Pavone also acknowledged that in 1991 he had pled guilty to a criminal charge. He said he was not aware of whether the clerk of court included his Social Security number in public records relating to that charge.

With regard to the accident, Pavone acknowledged that he had called the Schaumburg police and that he had given the police the information on the crash report,

4

including his driver's license number. That, however, was involuntary. Under Illinois statute, a driver is required to display his driver's license when a police officer requests it, and the statute defines "display" as "the manual surrender of his license certificate into the hands of the demanding officer for his inspection thereof." 625 Ill. Comp. Stat. 5/6-112.

Investigator Macek testified that he had been asked by defense counsel to run a background check on Pavone regarding cases in the Cook County court system. He went to the Richard J. Daley Center in Chicago and checked for criminal, civil, and traffic cases under Pavone's name using a public use terminal. Macek stated that when a traffic case comes up on the terminal, it includes the individual's address, driver's license, and date of birth. Macek said he had looked up criminal case information but did not recall what it showed. On cross examination, he said that he did not think that a Social Security number or driver's license number had come up in connection with the criminal record that he had reviewed.

Defense counsel introduced into evidence printouts from traffic cases (containing the incorrect driver's license number with a digit missing) as well as information he had obtained from the court clerk's office regarding the criminal case. He also introduced a certified copy of Pavone's birth certificate, which he evidently obtained from the county clerk's office. When the Court questioned whether it was "really accurate that you can go to the clerk's office and get somebody's birth certificate in the year 2017," defense counsel said yes but added, "I got that as an officer of the court. I ordered the birth certificate." The Court probably should have inquired further regarding what exactly defense counsel meant by this, but did not do so.

5

**Discussion**

In *Spokeo*, the Supreme Court concluded that to have standing under Article III, a plaintiff must show that he has suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. Both tangible and intangible harms can satisfy the concreteness requirement; though tangible injuries are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete." *Id.* at 1549-50. The analysis of injury in fact should draw on "both history and the judgment of Congress . . . ." *Id.* at 1549. History plays a role because "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Congress's judgment plays a role because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (internal quotation marks and citations omitted).

The Seventh Circuit has recently applied *Spokeo* in two cases brought under federal statutes, finding in both that the plaintiff lacked standing. In *Meyers v. Nicolet Rest. of De Pere*, 843 F.3d 724 (7th Cir. 2016), the plaintiff gave his credit card to the defendant to pay for a meal. The receipt that he got back did not truncate the expiration date of his credit card, as required by the Fair and Accurate Credit Transactions Act (FACTA), 15 U.S.C. § 1681c(g)(1). Meyers filed a putative class action, seeking only statutory damages; he claimed no actual harm. The Court concluded that Meyers had

6

not suffered an actual and concrete injury and that the violation had not created "any appreciable risk of harm." *Meyers*, 843 F.3d at 727. "After all, Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised." *Id.* In *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), the plaintiff provided personal identifying information to the defendant when he subscribed to its cable services. Later, after cancelling his subscription, he learned that the defendant had retained all of his information. He sued, alleging a violation of a provision of the Cable Communications Policy Act that requires a cable operator to destroy personally identifiable information that is no longer necessary for the purpose for which it was collected. *See* 47 U.S.C. § 551(e). The plaintiff did not claim any actual harm. The court described his claim of injury as follows:

> Gubala knew of the violation . . ., and he may have feared that despite [Time Warner's] denial his personal information might have been stolen from Time Warner or sold or given away by it, and if so the recipient or recipients of the information might be using it, or planning to use it, in a way that would harm him. Although it's plausible that he feared this, he never told us that this is what he was worried about. His only allegation is that the retention of the information, on its own, has somehow violated a privacy right or entailed a financial loss.

*id.* at 910. The court acknowledged that there was a risk of harm but concluded that it was not plausible in Gubala's case given the passage of ten years since he had turned over the information and the absence of any claimed leaking of the information in the interim. *Id.* at 910-11. The court concluded that standing was lacking due to "the absence of allegation let alone evidence of any concrete injury inflicted or likely to be

inflicted on the plaintiff as a consequence of Time Warner's continued retention of his personal information . . . ." *Id.* at 913.

Pavone's case differs from *Meyers* and *Gubala*. The plaintiffs in both of those cases had voluntarily provided their personal information to the defendants; their injury involved merely the defendant's retention of information they had once willingly turned over. In this case, by contrast, Pavone never gave his information to Mancini, and he did not consent to its disclosure to Mancini. He is suing Mancini for obtaining his information, not for retaining it. Obtaining personal information from motor vehicle records without authority is part of what the DPPA specifically prohibits. As Judge Robert Miller recently put it, under the DPPA, "[i]n Congress's judgment, once a plaintiff's information is disclosed or obtained for a prohibited purpose, the damage is already done." *Whitaker v. Appriss, Inc.*, No. 3:13-cv-826, 2017 WL 193056, at *5 (N.D. Ill. Jan. 17, 2017).

Pavone's testimony that he was upset and frustrated that a stranger had obtained his personal information and then used it to solicit him for a business arrangement was credible. His testimony is sufficient to establish by a preponderance of the evidence that he suffered a concrete and particularized injury fairly traceable to Mancini's obtaining and use of his driver's license number. As the Court noted in an earlier decision in this case, this sort of invasion of privacy results in the type of harm that provides an appropriate basis for standing. *See* Pavone, 2016 WL 7451628, at *2. As another court recently stated in a DPPA case, "the type of harm at issue—the viewing of private information without lawful authority—has a close relationship to invasion of the right to privacy, a harm that has long provided a basis for tort actions in the English and

8

American courts." *Potocnik v. Carlson*, No. 13-CV-2093, 2016 WL 3919950, at *2 (D. Minn. July 15, 2016). *See also, e.g., Engebretson v. Aitkin Cty.*, No. CV 14-1425, 2016 WL 5400363, at *4 (D. Minn. Sept. 26, 2016).

Mancini makes several arguments in support of his contention that Pavone lacks standing under Article III. Each lacks merit. First, Mancini argues that a claim of emotional distress is insufficient to establish standing absent a physical injury. That is not the law. *See Spokeo*, 136 S. Ct. at 1549-50 (intangible injuries may suffice). The Court rejects, for the same reason, Mancini's contention that the absence of psychiatric or medical treatment defeats a claim of standing based on an emotional distress-type injury. This argument confuses the severity of an injury with its existence. As the Court has stated, it found credible Pavone's statement that Mancini's possession and use of his driver's license number caused him distress. The dollar value of this may be small, but it is a concrete injury nonetheless.

Second, Mancini argues that the risk of a privacy invasion is insufficient. But this case does not involve a mere risk; Pavone's privacy *was* violated by Mancini's obtaining and use of his personal information to solicit him for business. Under *Meyers* and *Gubala*, Pavone's statement that he was concerned about future advertent or inadvertent disclosures by Mancini would not have been enough by itself to support standing. In those cases, however, the defendants were not claimed to have invaded the plaintiff's privacy by obtaining his information in the first place, as both plaintiffs had voluntarily given their information to the defendant. This case, as the Court has explained, is different.

Third, Mancini argues that "to have a [loss of] privacy claim, there has to be

9

private information. If information is public, there is no loss of privacy." Though counsel did not develop the point during his argument at the hearing, this seemed to be a contention that because Pavone's driver's license number was already a matter of public record, Mancini's possession and use of it could not possibly cause him distress. This argument is factually deficient, because it assumes that Pavone was aware that his driver's license number was contained in public court records. To the contrary, the Court found credible Pavone's testimony that he was unaware of this prior to the hearing. And the Court also notes that the number contained in the records Mancini offered was not Pavone's actual driver's license number. In addition, Mancini's argument is legally deficient because, again, it confuses the extent or degree of injury with its existence.

## Conclusion

For the reasons described above, the Court concludes that Pavone has established his standing to sue consistent with the requirements of Article III of the Constitution. The case is set for a status hearing on April 5, 2017 at 9:30 a.m. to set a schedule for further proceedings.

Date: March 31, 2017

_____
MATTHEW F. KENNELLY
United States District Judge